RAND et al. v. COLUMBIA NAT. BANK OF TACOMA, WASH., et al.

(Circuit Court, D. Minnesota. June 15, 1898.)

BANK STOCK—OWNER'S LIABILITY.

Where one subscribes for part of an increased issue of national bank stock, but actually receives original stock instead, and holds it for several years, receiving dividends and paying assessments thereon, he will be liable, upon failure of the bank, to assessment on such stock by the comptroller of the currency.

This was a suit in equity by Alonzo T. Rand, Rufus R. Rand, and Kate A. Ogle against the Columbia National Bank of Tacoma, Wash., Philip Tillinghast, its receiver, and James H. Eckels, as comptroller of the currency, to enjoin the prosecution of actions at law by said receiver to recover an assessment made by the comptroller on certain shares of the bank's stock.

A. B. Jackson, for complainants.
J. B. Atwater, for defendants.

LOCHREN, District Judge. The bill of complaint in this suit alleges the organization of the defendant the Columbia National Bank of Tacoma, Wash., under the national banking laws of the United States on September 2, 1891, with a banking capital of $200,000, divided into 2,000 shares of $100 each; and that on the 24th day of October, 1895, the defendant James H. Eckels, comptroller of the currency, took possession of said bank and its books and assets, and later transferred the same to the defendant Philip Tillinghast, whom he appointed receiver of said bank; and that said Eckels, as such comptroller, on June 22, 1896, made an assessment and requisition upon the shareholders of said bank of $61 on each and every share of the capital stock of said bank. Also that said Tillinghast, as such receiver, has, by direction of said comptroller, begun an action at law in this court against every one of said com-

plainants, wherein he seeks to recover of every of said complainants, severally, the sum of $3,050 and interest, being the amount of said assessment upon 50 shares of the capital stock of said bank, which said Tillinghast, as such receiver, alleges was owned by each of the complainants at the time of the failure of said bank. The complainants aver that they are not, and never were, shareholders of said bank, but that on the 12th day of January, 1892, the shareholders of said bank duly passed the following resolution:

"Resolved, that under the provisions of the act of May 1, 1886, the capital stock of this association be increased in the sum of $300,000, making the total capital $500,000. Further resolved, that, as the money paid in amounts to $50,000 or more, the president or cashier be authorized to certify the same to the comptroller of the currency, and shall so continue to certify until the said $300,000 is paid in."

And that thereafter, on or about July 1, 1892, each of said complainants subscribed for 50 shares of such proposed increase of the capital stock of said bank, and paid to said banking association the amount of $5,100 in full upon such subscription, taking its receipt therefor in the form of certificate for 50 shares of the capital stock of said bank; but that such proposed increase of stock was never, except in part, subscribed for, and was abandoned; and that an increase of such stock of $150,000, afterwards certified by the comptroller, had never been subscribed for nor paid in, and that such certification by the comptroller was and is null and void. The object of this suit is to enjoin the said actions at law, and any attempted collection of the said assessments against complainants. No service was had upon the comptroller, and he does not appear; and this suit, together with the three actions at law sought to be restrained, are submitted upon the stipulated facts, supplemented by a very little oral testimony taken at the hearing. The evidence supports the allegations of the bill as to the organization of the bank, and the adoption by the shareholders of the resolution of January 12, 1892, for the increase of the capital stock of the bank to $500,000; and shows that on July 18, 1892, the complainant Alonzo T. Rand was at the office of said bank in Tacoma, and was informed of the proposed increase of the stock of said bank to $500,000, and that he was desirous to obtain stock of that bank for himself and for the other complainants, and then subscribed for 50 shares of the capital stock of said bank for himself and for a like amount for each of the other complainants at $101 per share, to be paid on call of the said bank, the certificates of stock to be sent to the Nicollet National Bank of Minneapolis, Minn. On the 19th day of July, 1892, the vice president of said Columbia National Bank inclosed to the cashier of the Nicollet National Bank three certificates of the original stock of said Columbia National Bank, one for each of the above-named complainants, each certificate stating that the capital stock of said Columbia National Bank was $200,000, and that the complainant named therein was the owner of 50 shares of $100 each in the capital stock of the Columbia National Bank of Tacoma, directing said cashier to deliver such certificates of stock to the parties named therein on payment of $5,050 for each certificate, and that such certificates were, on July 23, 1892, delivered to the complainants, respectively, who

each paid for his or her own certificate the said sum of $5,050. On January 3, 1893, each of said complainants was paid by said Columbia National Bank the sum of $200, being a stock dividend of 4 per cent. declared by said bank on December 30, 1892; and on January 2, 1894, each of said complainants was paid by said Columbia National Bank another sum of $200, being another stock dividend of 4 per cent., declared by the same bank on December 28, 1893. On July 18, 1895, the comptroller of the currency notified said Columbia National Bank that he found its capital stock impaired, and required it to assess its capital stock 25 per cent., which was done, and in compliance therewith each of the complainants paid to said bank $1,250. On the 25th day of July, 1895, the board of directors notified the comptroller of the said resolution of January 12, 1892, to increase by $300,000 the capital stock of said bank, and that $150,-000 had been paid in and certificates issued therefor, and requested the comptroller to approve the increase to $350,000. After further correspondence and action, needless to refer to, this increase of capital stock of said bank to $350,000 was approved by the comptroller October 23, 1895, and two days later the comptroller put the bank, as insolvent, into the hands and charge of a receiver.

The testimony of Alonzo T. Rand indicates that in his conference on July 18, 1892, with the officers of the Columbia National Bank of Tacoma, its then last printed statement, of July 12, 1892 (Exhibit 15), was put in his hands, stating that the bank was increasing its capital to $500,000, and therefore it was this proposed increase alone that he bargained concerning. There was nothing in the situation or in the negotiation to indicate on the part of Mr. Rand any preference for the proposed new stock over the original. The subscription for the stock was different in its terms from any other subscription for the new or increased stock. But, admitting that this subscription was intended and understood to be for the increase stock only, it is certain that the certificates of stock which were on the next day sent by the vice president of the Columbia National Bank to the cashier of the Nicollet National Bank for delivery to the subscribers on payment, were for original stock of the Columbia National Bank, and so appeared upon the face of each certificate. That particular stock was therefore offered, accepted, and paid for, as the stock bargained for, or in lieu of the stock bargained for. Being so accepted and paid for, the purchaser cannot be permitted, after holding it several years, and receiving dividends and paying assessments upon it, to claim now, after the collapse of the bank, that it was not the kind of stock which he at first supposed he subscribed for. Even if the certificates of stock delivered to the complainants could have been regarded as receipts for money paid on subscription,—though they state no amount,—and only to be considered certificates of stock when the increase on which the payment was made was approved by the comptroller, still such approval was had before the failure of the bank. The resolution of January 12, 1892, under which the subscriptions for increase were made, expressly provided for increase by installments, or in part, to the amount of paid-in subscriptions whenever certified to amount to $50,000 or more. Such certificate was

made to the comptroller before his approval of the $150,000 increase, and whatever was done September 9, 1895, whether valid or not, was unnecessary. The case is a hard one upon the stockholders, as is every case where they have to make good the losses caused by unwise or dishonest management. But as against the receiver, who represents the creditors of the Columbia National Bank, there is no equity in the contention of the complainants. Decree will be entered dismissing the bill, with costs. In the law cases, counsel will draft proper findings.