### ANDERSON v. BENEDICT.

### No. 4375.

District Court, S. D. Ohio, W. D.

July 22, 1932.

Nichols, Morrill, Wood, Marx & Ginter, of Cincinnati, Ohio, for plaintiff.

John Weld Peck and James B. Benedict, both of Cincinnati, Ohio, for defendant.

NEVIN, District Judge.

The Comptroller of the Currency of the United States having found that the First National Bank of St. Petersburg, Fla., was insolvent and unable to pay its just and legal debts, plaintiff herein was, by said Comptroller, appointed receiver of said bank, on June 9, 1930. Subsequently plaintiff brought this action against the defendant herein to recover the assessment levied upon that portion of the stock of said bank, of which plaintiff alleges defendant was the owner. The action is brought in accordance with the acts of Congress in such cases made and provided.

Plaintiff, in his bill, alleges that the defendant is the owner of record of 240 shares of the capital stock of said bank. Defendant, in his answer, admits that he is the owner of 90 shares, but alleges that, if the record shows him to be the owner of any stock in excess thereof, then "the said excess is composed of stock issued in contravention of the laws of the United States, and therefore illegal and void." Defendant admits that he received notice of the assessment levied upon him, and admits his liability to pay $9,000 of said assessment, of which he has only paid $6,000. He avers his willingness to pay $3,000 additional.

In his answer, defendant alleges further "that at various times during the period from 1917 to 1925 inclusive, the said National Banking Association did attempt to increase its capital by means of the issuance of stock dividends, that is to say, by transferring certain portions of its surplus and undivided profits to capital, and issuing stock to the various stockholders of said Association in proportion to their respective holdings. Defendant is the holder of certificates purporting to represent One Hundred and Fifty (150) shares of this stock-dividend stock. No part of such increases of capital was paid in to said National Banking Association, nor were the actual total assets and resources of said Association increased, nor was the proportionate interest or share of ownership of this defendant or of any other stockholder, in said Association or in the assets, resources and earnings of said Association, actually increased on account of or as a result of the said attempted increases of capital. Defendant further says that the aforesaid attempted increases of the capital of said Association were made without authority of law; that said One Hundred and Fifty (150) shares of

stock-dividend stock held by this defendant are invalid and void and have been invalid and void from the dates of their respective issuances; and that that portion of the assessment levied against this defendant on the basis of said void stock, to-wit, the sum of Fifteen Thousand ($15,000.00) Dollars, is unlawful and unenforceable and constitutes no liability on the part of this defendant." Defendant asks, therefore, that upon payment of the sum of $3,000 with interest he be dismissed.

In his reply to defendant's answer, plaintiff alleges that defendant received 240 shares of capital stock, voted said shares, and received, accepted, and ever since has kept all of said stock dividends and cash dividends; that the issue of all of the stock and the increase of said capital stock was approved by the Comptroller of the Currency of the United States in the manner and form provided by law; that a portion of the increase of capital was accomplished by the agreement of stockholders to transfer certain portions of the undivided profits of said national bank, to which the stockholders were entitled as a cash dividend, to the capital of said bank, and by said stockholders accepting paid-in certificates of said increased capital stock, and that all of such increase was paid in as provided by law; that the capital of said bank was thereby increased; that the share of the defendant in said capital was increased; that the security of depositors as measured by the nonwithdrawable capital of the bank and the liability of stockholders for an assessment equal to said capital was thereby increased; that the defendant voted his stock in favor of all increases of capital and all stock dividends, and exercised all of the rights of a stockholder, and, with full knowledge of the facts as to said increases of capital, ratified, and approved the same and acquiesced therein, and held out said bank to its depositors and creditors as having a valid outstanding paid-in capital of $600,000, and credit was given to said bank and money deposited therein upon the representation that said defendant was the record owner of 240 shares thereof; that, by reason of the defendant's conduct, he is estopped from denying to the depositors of the bank and the creditors thereof, represented by the receiver, that the capital of said bank was less than $600,000, and is estopped from denying that the interest of said defendant in said capital was less than 240 shares thereof.

The evidence shows the following as to the dates when and the number of shares acquired by defendant:

| Certificate No. | Date Received. | No. of Shares. |
|---|---|---|
| 70 | June 15, 1915 | 15 |
| 81 | Aug. 24, 1917 | 15 |
| 109 | Sept. 28, 1917 | 10 |
| 119 | July 10, 1920 | 40 |
| 201 | Apr. 8, 1924 | 40 |
| 302 | Dec. 21, 1925 | 120 |
| Total | | 240 |

and the following as to the dividends received by the defendant from 1923 to the date of the closing of the bank:

| Check No. | Date Received | Dividend No. | Amt. of Dividend. |
|---|---|---|---|
| 1 | June 30, 1923 | 30 | $ 400.00 |
| 1 | Dec. 31, 1923 | 31 | 800.00 |
| 2 | June 30, 1924 | 32 | 1,200.00 |
| 2 | Dec. 31, 1924 | 33 | 720.00 |
| 2 | June 30, 1925 | 34 | 960.00 |
| 2 | Dec. 31, 1925 | 35 | 960.00 |
| 2 | June 30, 1926 | 36 | 1,200.00 |
| 2 | Dec. 31, 1926 | 37 | 1,440.00 |
| 3 | June 30, 1927 | 38 | 1,440.00 |
| 3 | Dec. 31, 1927 | 39 | 1,440.00 |
| 4 | June 30, 1928 | 40 | 1,440.00 |
| 4 | Dec. 31, 1928 | 41 | 1,200.00 |
| 8 | June 29, 1929 | 42 | 960.00 |
| 8 | Dec. 31, 1929 | 43 | 960.00 |
| Total | | | $15,120.00 |

The defendant concedes that he received all of the certificates and still has them, and that he received all of the dividends and has never tendered any part of the stock or the cash dividends back to the bank or its receiver. Of the 240 shares above noted, it is the claim of defendant, as hereinbefore set out, that 150 shares were acquired as the result of increases in the capital stock brought about by the declaration of stock dividends, and that said stock was issued in contravention of law, and is therefore illegal and void. Defendant bases his claim just referred to on the language employed in title 12, sections 57 and 58 of the United States Code (12 USCA §§ 57, 58), having to do with the increase of capital by a national banking association, and in their brief counsel for defendant say: "Thus, in order to establish the invalidity of this stock dividend, one need go no further than the aforementioned Statutes, Sections 57 and 58 of the U. S. Code."

In the view which the court takes in the instant case, however, this question which the defendant raises is not open for considera-

tion or for determination by this court in this action. The record shows with reference to the increase of the capital stock as follows:

First increase, $25,000 to $50,000, approved by Comptroller January 20, 1914. Second increase, $50,000 to $100,000, approved by Comptroller August 24, 1917. The defendant, Mr. Benedict, voted his 15 shares for said increase. Third increase, $100,000 to $200,000, approved by Comptroller July 10, 1920. Mr. Benedict voted his 40 shares for this increase. The resolutions certified to the Comptroller do not show that any part of the foregoing increases were stock dividends. Fourth increase, $200,000 to $300,000, approved by Comptroller April 8, 1924. The record shows that it was resolved to increase the stock by $100,000, "of which $50,000.00 shall be paid by stock dividend from undivided profits of the Bank and $50,000.00 shall be paid for in cash." The record shows that Mr. Benedict voted his 80 shares for said increase. The certificate of the accomplishment of said increase shows that $50,000 was paid in "by stock dividend, which has been formally declared, the amount thereof to be transferred from undivided profits to capital stock account and stock certificates issued upon receipt of approval from Comptroller of the Currency; and it is further certified that the paid in capital stock now amounts to $300,000.00. The surplus, after paying said dividend, amounts to 20% of the capital as increased." Upon receipt of the foregoing certificate, the Comptroller of the Currency issued the following certificate: "Now, it is hereby certified, that the capital stock of the First National Bank of St. Petersburg having been increased in the sum of $100,000.00 and the amount of the increase paid into the Bank as a part of the capital stock thereof, the said increase of capital is approved. April 8, 1924." Fifth increase, $300,000 to $600,000. The record shows that it was resolved to increase the capital $300,000 "to be effected by a declaration of a stock dividend." An exhibit in the case shows that the defendant, Mr. Benedict, voted his 120 shares in favor of said increase. A proxy from Mr. Benedict authorizing such vote, however, was not produced, though request was made by defendant that plaintiff produce same. Mr. Benedict did, however, accept and keep the 120 shares of stock apportioned to him as the result of said increase. The certificate states that the increase has been accomplished by the declaration of a dividend "payable in stock of the bank on receipt of certificate of approval from the Comptroller of the Currency; and that there is on hand surplus

equal to 20% of the capital as increased after providing for this stock dividend." The approval of the Comptroller is dated December 31, 1925, showing that the increase has been effected by stock dividend and certifying to the approval thereof. In each case the approval of the Comptroller of the Currency to the proposed increase of capital stock was obtained. The procedure followed in each of the five increases of capital stock was similar. First, the bank certified a copy of the resolution adopted by its stockholders to the Comptroller, showing the amount of the increase of capital, the names of the stockholders voting in favor of the increase, and the presence of a quorum; second, the bank certified to the Comptroller that the capital stock had been increased and that the increased capital had been paid in to the bank; third, the Comptroller, after due investigation, issued his certificate authorizing and approving the increase of capital stock. There were no further increases after 1925. The bank did not suspend until June 7, 1930. During the five-year period, the defendant, Mr. Benedict, continued to hold his stock, to receive and keep all of the dividends thereon, including not only the cash dividend but dividends by virtue of the payment to him of an interest in a securities corporation formed by the bank. During all of these years the bank publicly advertised in the newspapers in various publications, on billboards, in the street cars, upon its windows, and in the financial statements placed upon its counters for the convenience of depositors, as well as in its financial reports to the Comptroller, that its capital stock was $600,000. It is also shown that many new deposit accounts were opened after 1925 in reliance upon the advertised capital and resources of the bank, and that all of these facts were brought home to the defendant, who personally received numerous letters from the bank on which the statement appeared "Capital $600,000.00, Surplus $400,000.00"; in addition he visited St. Petersburg, Fla., about once a year during the years following 1925 and went to the bank, where he discussed generally, but not in detail, the financial condition and business of the bank with its president. It was further shown by numerous letters that Mr. Benedict was personally advised that the increase of capital stock was to be accomplished by the payment of stock dividends and the transfer of the amount of the dividend from undivided profits to capital, and that during all of this time he was an attorney at law. The record shows that before the bank declared the stock dividends of 1924 and 1925 it took the

matter up with the Treasury Department at Washington, and obtained from the Comptroller specific information as to the procedure to follow; that this procedure was followed and the approval of the Comptroller obtained. The only defense to the present case is the claim made by Mr. Benedict in his answer that part of the stock upon which the assessment was levied and upon which he was receiving dividends and taking all the benefits, was not lawfully issued, and therefore he seeks to have the assessment levied by the Comptroller on such shares set aside.

The court agrees with the view as expressed by counsel for plaintiff, that this defense is an attempt to attack collaterally the certificate of the Comptroller approving of the increase of stock and the order of the Comptroller levying the assessment, and that this cannot be done in this present action. The duty and authority to determine such questions is vested in the Comptroller, and his determination, if it is to be attacked at all, must be attacked in a direct action brought against the Comptroller. This is not such an action. The Comptroller is not a party plaintiff or defendant. This is an action which is, in effect, between the creditors of the bank and the stockholder, in which the stockholder seeks collaterally to attack an order of the Comptroller. With respect to this, counsel for defendant in their brief say, "We do not attack the certificate of the Comptroller except only incidentally in so far as it formally states what does not exist," and it is the claim of counsel that this inquiry not being with respect to any irregularities in these certificates, but rather with respect to the validity of the stock under the law, that the cases holding that the certificate of the Comptroller cannot be attacked in such an action as this are not germane or decisive of the question raised by defendant here. But the court is of the opinion that the authorities do sustain the view that, even keeping in mind the claim of defendant, still the certificate of the Comptroller cannot be collaterally attacked in such an action as this. In the case of Brown v. Tillinghast, 93 F. 326 (C. C. A. 9) the court in the opinion on page 329 of 93 F., say: "In the present case a shareholder sues the receiver in equity, and seeks to recover the amount which he has paid on his subscription to the increased capital, and he asks the court to decree that the increase was illegal, and the comptroller's certificate void. There is no substantial difference in the causes of action. They are both actions against the receiver, and the object and purpose of both is the same. In

neither is the proceeding directly against the comptroller, or for the purpose of correcting or revising his decision. In the view which this court and other courts have taken of the nature of the comptroller's function in certifying to an increase of capital stock, the present suit is a collateral attack upon a judicial or a quasi judicial decision,—a decision which is conclusive except as against direct attack. Tillinghast v. Bailey [C. C.] 86 F. 46; Rand v. [Columbia Nat.] Bank [C. C.] 87 F. 520."

To the same effect, Columbia National Bank v. Mathews (C. C. A.) 85 F. 934; Casey v. Galli, 94 U. S. 673, 24 L. Ed. 168; Bushnell v. Leland, 164 U. S. 684, 17 S. Ct. 209, 41 L. Ed. 598; Christopher v. Norvell, 201 U. S. 216, 26 S. Ct. 502, 50 L. Ed. 732, 5 Ann. Cas. 740.

As there is no other defense, this disposes of the case. It is unnecessary, therefore, for the court to discuss or determine whether or not the defendant is estopped from asserting any irregularity or invalidity in the issue of the stock held by him as against plaintiff, representing depositors and creditors, but from a study of the case it appears to the court that it would be most unfair if defendant were not so estopped and yet permitted to keep all the benefits of the ownership of the stock, including the dividends paid thereon. It does not seem reasonable, to say the least, that the stock should have been treated by defendant as valid for dividend purposes and now claimed to be invalid for assessment purposes, and it would seem that under all the facts of the instant case as disclosed by the record, were it necessary to decide that question, this is a case wherein, if ever, estoppel should be invoked. Basing its conclusions, however, on the ground that the certificate of the Comptroller cannot be collaterally attacked in this action, the court finds in favor of the plaintiff and that the prayer of plaintiff's bill should be granted.

It appears to the court that the language used by the Court of Appeals of this circuit, in the case of Bailey v. Tillinghast, 99 F. 801, is pertinent to the case at bar, where, at page 807 of 99 F., the court say: "In the first place, it is altogether incompatible with the policy and purposes for which these banking associations are created and allowed to do business that mere irregularities, or even fraudulent practices, in organization or management, should wholly invalidate the exercise of their vital functions, and give ground for a stockholder to repudiate his obligations to the public. There would be no security in doing business with such institutions. If

such business was done at the peril of being undermined and invalidated by the development and maintenance of such defenses, it would destroy public confidence, and the business would come to an end."

An order may be drawn awarding judgment accordingly.