### SLAUGHTER v. BROWN.
#### No. 4392.

District Court, D. New Jersey.
July 19, 1935.

Bourgeois & Coulomb, of Atlantic City, N. J. (William B. Hunter, Jr., of Atlantic City, N. J., of counsel), for plaintiff.

Bolte & Tripician, of Atlantic City, N. J., for defendant.

AVIS, District Judge.

The receiver instituted suit against defendant based upon an assessment made by the Comptroller of the Currency against stockholders of the Union National Bank, an insolvent banking corporation. In the complaint it is alleged that defendant at the time the assessment was levied owned 10 shares of the capital stock of the bank, of a par value of $100 per share. The assessment, made on January 8, 1934, was 100 per cent. The defendant's alleged liability is $1,000. The answer admits all of the material allegations of the complaint, but sets up thirteen separate defenses as a bar to the action. The first defense states that defendant was adjudicated a bankrupt on April 21, 1933, and that by reason thereof from that time on he was not the legal or equitable owner of said shares of stock, and consequently is not liable for the assessment. It is not necessary to discuss this defense, as defendant in his brief consents that it be stricken.

Defenses "Second" to "Seventh," inclusive, are all based upon the assertion and apparent facts that defendant was, on April 21, 1933, adjudicated a bankrupt, and was duly discharged on July 31, 1933, and that defendant included the stock as an asset and his liability to assessment thereon in his scheduled list of debts.

The plaintiff moves to strike the answer and the defenses set up, claiming all of them to be frivolous or sham. It does not seem necessary to specifically set forth the various defenses interposed. Many combinations are disclosed in the items set forth, but a study thereof reveals the actual points to be as follows: (1) That the listing of the stock as an asset, and the liability to assessment thereon as a debt, and the liability for assessment not having been excepted in the discharge, the defendant was discharged from the indebtedness. (2) That the liability for assessment was a provable debt at the time of adjudication and discharge, because: (a) Defendant was a surety; (b) debt or liability was founded on implied contract; (c) liability had occurred at the time of and prior to defendant's discharge, and was then a provable debt; (d) insolvency of, sale of assets, and voluntary liquidation of Union National Bank prior to adjudication and discharge, rendered the debt provable; (e) claim under assessment on stock was a provable debt and capable of being enforced at the time of adjudication and discharge.

As to the first question, no cases are cited in brief, and the court has found none, which even suggest that in a case of this character the court has any right to except from discharge any debts of the bankrupt. The statute (11 U.S.C.A. § 35) provides that the discharge "shall release the bankrupt from all of his provable debts," except such as are particularly scheduled in the statute.

In Remington on Bankruptcy (4th Ed.) vol. 7, § 3440, it is set forth:

"In some reported cases, the bankruptcy court, in granting a discharge, uses language indicating that it considers it to be within the court's function, when the discharge is granted, to limit or qualify its effect.

"Notably is this so in regard to individual bankruptcies where the individual bankrupt is also a member of a partnership, the courts sometimes attempting to qualify the order of discharge by limiting it to individual debts. However, in general, the bankruptcy court in granting a discharge should not attempt to limit the effect of the discharge, the sole function of the court being to grant or refuse the discharge, the law itself then fixing the extent and effect of the discharge. Thus, in cases of individual bankruptcies, the discharge should be, in the words of the form of the order, 'from all provable debts excepting those excepted' by the statute. If, then, the statute does not except partnership

debts, the court should not attempt to do so." Pages 667, 668.

The mere fact of scheduling and the failure to except the claim in discharge cannot be relied upon as a defense in this action.

The second question is as to whether the claim under assessment was a provable debt at the time of adjudication. While it may be that a creditor might have leave to prove a debt accruing after adjudication, under the circumstances in this case, as ascertained from the pleadings and an examination of the cases, I am satisfied that the question involved is whether the amount due on the assessment was or was not a provable claim at the time of adjudication.

I am unable to agree with the decided cases holding that a stockholder in a national bank becomes a surety as to his liability for assessment to pay the creditors of an insolvent institution. See McClaine v. Rankin, 197 U.S. 154, 25 S.Ct. 410, 49 L.Ed. 702, 3 Ann.Cas. 500. The court in that case on page 161 of 197 U.S., 25 S.Ct. 410, 412, 49 L.Ed. 702, said: "Some statutes imposing individual liability are merely in affirmation of the common law, while others impose an individual liability other than that at common law. If § 5151 had provided that subscribing to stock or taking shares of stock amounted to a promise directly to every creditor, then that liability would have been a liability by contract. But the words of § 5151 do not mean that the stockholder promises the creditor, *as surety* for the debts of the corporation, but merely impose a liability on him as secondary to those debts, which debts remain distinct, and to which the stockholder is not a party. The liability is a consequence of the breach by the corporation of its contract to pay, and is collateral and statutory." (Italics mine.) See, also, Thomas v. Matthiessen, 232 U.S. 221, 236, 34 S.Ct. 312, 314, 58 L.Ed. 577.

Under the early cases it is somewhat debatable as to whether the obligation is a contract or a claim based upon a statutory liability. Under different circumstances the courts have come to different conclusions.

■ It is quite clear that the one in whose name stock stands on the books of the association remains liable for assessment, so long as the stock is allowed to stand in his name. See Matteson v. Dent, 176 U.S. 521, 530, 20 S.Ct. 419, 423, 44 L.Ed. 571.

■ The case of McClaine v. Rankin, 197 U.S. 154, at pages 162, 163, 25 S.Ct. 410, 413, 49 L.Ed. 702, 3 Ann.Cas. 500, supra, involved the statute of limitations as applied to an action instituted to recover an assessment in a national bank matter, and the court said in conclusion: "But here the right to sue did not obtain until the Comptroller of the Currency had acted, and his order was the basis of the suit. The statute of limitations did not commence to run until assessment made, and then it ran as against an action to enforce the statutory liability, and not an action for breach of contract."

This decision of the Supreme Court as applied to the matters involved in the instant action has never been changed or reversed. On the contrary, it has been uniformly followed to make effective the statute imposing double liability on holders of national bank stock.

See the opinion in Christopher v. Norvell, 201 U.S. 216, on pages 225 and 226, 26 S.Ct. 502, 504, 505, 50 L.Ed. 732, 5 Ann. Cas. 740, wherein the court fully sustains the principle declared in the McClaine Case. See, also, Thomas v. Matthiessen, 232 U.S. 221, 34 S.Ct. 312, 58 L.Ed. 577, supra.

The case of Armstrong v. McAdams (C. C.A.8) 46 F.(2d) 931, was an action to recover on an assessment made by the Comptroller, and involved the question of the statute of limitations. The decision in the case of McClaine v. Rankin, as to the action arising from a statutory liability and not out of contract express or implied, was discussed and approved.

The doctrine of the McClaine Case was followed in the case of Holman v. Clark (D. C. E. D. Mich. N.D.) 48 F.(2d) 253. After citing from the Supreme Court case, the court said on page 254 of 48 F.(2d): "Section 5151 of the United States Revised Statutes to which the court there referred is now sections 63, 64 of title 12 of the United States Code (12 U.S.C.A. §§ 63, 64), already hereinbefore quoted. That decision has not been overruled or modified, either expressly or by inference, and is therefore clearly binding upon this court and decisive of the question now under consideration."

In the case of Thomas v. Commonwealth Trust Co. of Pittsburgh (D. C. W. D. Pa.) 2 F.Supp. 654, on page 655, which involved the right to recover against the committee of a lunatic, the court approved

the principle stated in the McClaine Case, and said:

"The question under immediate consideration is essentially the same as was before the Supreme Court in Christopher v. Norvell, 201 U.S. 216, 26 S.Ct. 502, 50 L.Ed. 732, 5 Ann.Cas. 740. In that case the stockholder was a married woman, who, under the statutes of the state of her residence, was incapable of entering into a contract. As in the present case, it was there asserted by the defendant below that the relation of the shareholder to a national bank is wholly contractual in character, and that the inability of defendant to contract freed her from liability for her share of the assessment. The court held that the liability did not arise wholly out of contract, but was collateral and statutory, and that the defendant was subject to assessment. See, also, Keyser v. Hitz, 133 U.S. 138, 10 S.Ct. 290, 33 L.Ed. 531; McClaine v. Rankin, 197 U.S. 154, 25 S.Ct. 410, 49 L.Ed. 702, 3 Ann.Cas. 500; Thomas v. Matthiessen, 232 U.S. 221, 235, 34 S.Ct. 312 [314], 58 L.Ed. 577.

"The purpose of the statute (section 64, supra) is manifest. Congress desired to protect creditors of national banks, and to strengthen such banks with the public by imposing upon them this liability of the shareholders as a safeguard. If certain stockholders are to be free from liability for reasons such as advanced in the instant case, the purpose of Congress would be seriously affected."

In the case of Rogers v. Jarden (D.C.) 3 F.Supp. 211, on pages 212, 213, which affected the question of proper pleading in the Eastern District of Pennsylvania, the court, in approving the doctrine set forth in the McClaine Case, said:

"The Supreme Court of the United States has recognized this form of liability as contractual in some aspects and noncontractual in others. In McClaine v. Rankin, 197 U.S. 154, 25 S.Ct. 410, 411, 49 L.Ed. 702, 3 Ann.Cas. 500, it was held that an action to enforce the statutory liability was not 'an action upon a contract or liability, express or implied, which is not in writing * * *' within the meaning of a state statute of limitations. To the same general effect is Christopher v. Norvell, 201 U.S. 216, 26 S.Ct. 502, 50 L.Ed. 732, 5 Ann.Cas. 740, where the state law construed prohibited a married woman from entering into a contract which would subject her to personal liability. For the limited purpose of construing these state statutes, the stockholder's statutory liability was held noncontractual.

"On the other hand, in Matteson v. Dent, in holding the liability to be a debt of the estate of a deceased stockholder, the court said: 'The obligation of a subscriber to stock to contribute to the amount of his subscription for the purpose of the payment of debts is contractual, and arises from the subscription to the stock. * * * This contract obligation, existing during life, is not extinguished by death, but like other contract obligations survives and is enforceable against the estate of the stockholder.'

"The situation which produced the apparent diversity of rulings in the foregoing cases exists in the present case. The trouble is that the Legislature usually fails to recognize and provide for quasi contractual obligations as a separate and distinct class, and, in construing the various statutes, it is necessary, therefore, to attempt to classify them as either contractual or noncontractual. In each case the governing consideration is the policy of the statute or law to be construed and what it was intended to accomplish."

The case of Hendrickson v. Helmer (Idaho, S.D.) 7 F.Supp. 627, was an action by a trustee in bankruptcy to set aside an alleged fraudulent conveyance made by the bankrupt to his wife four years before the assessment on his bank stock was made by the Comptroller. The court stated that under the Idaho law a transfer to a wife in good faith for the purpose of making a gift, and not to defraud existing creditors, was valid, and that the validity of such fraudulent conveyance against creditors does not depend upon subsequent events.

Discussing the legal aspects as affected by the decision in the McClaine Case the court said on pages 628, 629 of 7 F.Supp.: "Whether a conveyance of property is fraudulent or not, it must appear that there were existing creditors at the time of the alleged fraudulent transfer and that the transfer was made with the intent to delay or defraud such creditors. Section 54-906, I.C.A. As has been said, the liability of the bankrupt as a stockholder was statutory and contingent, depending upon the bank's inability to pay its debts and contracts. To say that the bankrupt was a debtor of the bank by reason of his contingent liability on his stock four years before it was known and determined that the

bank could not pay its debts and contracts and the assessment made by the Comptroller would be indulging in the realm of uncertainty which may never occur. If such reasoning is accepted, then a stockholder of a national bank could never in good faith convey any property while he owned stock without it being subject to cancellation in the event that at some future time the bank became insolvent and unable to pay its creditors."

In approving the doctrine in the McClaine Case the court said on page 628 of 7 F.Supp.: "The liability of a shareholder in a national bank to respond to an assessment in case of insolvency as prescribed by section 64, title 12 U.S.C.A. is statutory, and, upon the failure of the bank, the rights of its creditors intervene and attach. Scott v. Deweese, 181 U.S. 202, 21 S.Ct. 585, 45 L.Ed. 822; Concord First National Bank v. Hawkins, 174 U.S. 364, 19 S.Ct. 139, 43 L.Ed. 1007; Salter v. Williams et al. (D.C.) 219 F. 1017. It is for the benefit of the bank's creditors represented by the receiver of the bank, and is conditional and contingent, and the right to sue does not obtain until the Comptroller has acted, which is the basis of the suit. McClaine v. Rankin, 197 U.S. 154, 25 S.Ct. 410, 49 L. Ed. 702, 3 Ann.Cas. 500. The bank being insolvent and having creditors at the time it closed, the individual liability of its stockholders existed to such debts, contracts, and engagements of the bank."

There are some cases, as against estates, devisees, and legatees, in which it is held that the liability arises prior to the insolvency of the bank, and prior to the assessment by the Comptroller, for the purpose of charging the estates or beneficiaries with the payment of the assessment, but these decisions do not change the basic principle adopted in the McClaine Case.

As stated by Judge Kirkpatrick in the case of Rogers v. Jarden (D.C.) 3 F.Supp. 211, 213, supra: "In each case the governing consideration is the policy of the statute or law to be construed and what it was intended to accomplish."

I am convinced that, under the facts in the instant case, the doctrine of the McClaine Case is controlling; that the obligation of the defendant did not arise out of contract, express or implied, but was in the nature of a statutory liability; and that the debt arising therefrom became due and owing at the time the assessment was made. The liability of the shareholder, as to the debts of the national bank, is with relation to those debts owing at the time the assessment is made.

It is claimed by defendant that the Union National Bank was insolvent on September 30, 1931, when, for purposes of liquidation, it sold all of its assets to the Atlantic City National Bank under an agreement which, among other things, provided that the Union National Bank should, upon the expiration of the period of two years, the time fixed for liquidation, repay to Atlantic City National Bank the amounts due on unpaid notes, which were to be considered as losses. This is the liability upon which the Comptroller declared the bank insolvent and appointed a receiver and subsequently levied an assessment.

If the Union National Bank was actually insolvent on September 30, 1931, the date of the agreement, the liability of the defendant could not be fixed on that date. Many of the creditors' claims had been satisfied before the actual declaration of insolvency by the Comptroller, and it was impossible to fix the defendant's liability until after the bank had been taken over by the Comptroller.

The statute, found in 12 U.S.C.A. § 65, providing for the fixing of the liability by the court, as to banks in liquidation, could not advance the time of the defendant's liability, unless court proceedings had been taken thereunder.

In the case of Scovill v. Thayer, 105 U.S. 143, on pages 155, 156, 26 L.Ed. 968, which was an action to recover an assessment on stock of a corporation, not fully paid, and involved the time of the commencement of the running of the statute of limitations, the court, as to the time when the cause of action accrued, said:

"The question for solution is, therefore, When, under the facts of this case, did the cause of action accrue against the defendant in error? Certainly not until it became his duty to pay according to the terms of his contract or according to law.

"It is well settled that when stock is subscribed to be paid upon call of the company, and the company refuses or neglects to make the call, a court of equity may itself make the call, if the interests of the creditors require it. The court will do what it is the duty of the company to do. Curry v. Woodward, 53 Ala. 371; Robinson v. Bank of Darien, &c., 18 Ga. 65; Ward v. Griswoldville Manufacturing Co., 16 Conn. 593. But under such circumstances before

there is any obligation upon the stockholder to pay without an assessment and call by the company, there must be some order of a court of competent jurisdiction, or, at the very least, some authorized demand upon him for payment. And it is clear the Statute of Limitations does not begin to run in his favor until such order or demand. Van Hook v. Whitlock, 3 Paige (N.Y.) 409; Salisbury v. Black's Adm'r, 6 Har. & J. (Md.) 293 [14 Am.Dec. 279]; Sinkler v. Turnpike Company, 3 Pen. & W.(Pa.) 149; Walter v. Walter, 1 Whart.(Pa.) 292; Quigg v. Kittredge, 18 N.H. 137; Nimmo v. Walker, 14 La.Ann. 581.

"In this case there was no obligation resting on the stockholder to pay at all until some authorized demand in behalf of creditors was made for payment. The defendant owed the creditors nothing, and he owed the company nothing save such unpaid portion of his stock as might be necessary to satisfy the claims of the creditors. Upon the bankruptcy of the company his obligation was to pay to the assignees, upon demand, such an amount upon his unpaid stock as would be sufficient, with the other assets of the company, to pay its debts. He was under no obligation to pay any more, and he was under no obligation to pay anything until the amount necessary for him to pay was at least approximately ascertained. Until then his obligation to pay did not become complete."

Hawkins v. Glenn, 131 U.S. 319, on page 332, 9 S.Ct. 739, 743, 33 L.Ed. 184, was a case involving similar questions, and the court in that case said:

"Some further observations may not inappropriately be added. Unpaid subscriptions are assets, but have frequently been treated by courts of equity as if impressed with a trust sub modo, upon the view that, the corporation being insolvent, the existence of creditors subjects these liabilities to the rules applicable to funds to be accounted for as held in trust, and that therefore, statutes of limitation do not commence to run in respect to them until the retention of the money has become adverse by a refusal to pay upon due requisition.

"But the conclusion as to the statute need not be rested on that ground; for, although the occurrence of the necessity of resorting to unpaid stock may be said to fix the liability of the subscriber to respond, he cannot be allowed to insist that the amount required to discharge him became instantly payable though unascertained, and though there was no request, or its equivalent, for payment."

Under all of the circumstances of the instant case, I am satisfied that the ownership of the stock was in the defendant at the time of assessment; that the obligation was not a provable claim against the bankrupt estate at the time of adjudication; that the discharge of defendant as a bankrupt did not relieve him from the assessment on his stock made thereafter; and that the fact that the Union National Bank went into voluntary liquidation prior to defendant's adjudication as a bankrupt could not fix the liability of defendant prior to adjudication, unless proceedings had been taken prior thereto under the provisions of 12 U.S.C.A. § 65.

The answer will be stricken as sham, the defenses "First" to "Thirteenth," inclusive, will be stricken as sham or frivolous, and a rule for summary judgment will be entered for the amount of the assessment, with interest and costs.