## CORKER v. SOPER.
### No. 6119.

Circuit Court of Appeals, Fifth Circuit.

Oct. 30, 1931.

Blair Foster and Geo. L. Bell, Jr., both of Atlanta, Ga., for appellant.

J. S. Adams, of Dublin, Ga., and Scott Russell, of Macon, Ga., for appellee.

Before BRYAN, HUTCHESON, and WALKER, Circuit Judges.

HUTCHESON, Circuit Judge.

This appeal from a decree adjudging appellant to be the beneficial owner of 156 shares of stock of the First National Bank of Dublin, and as such liable to assessment on account of them, presents the single question whether the facts do not require a contrary holding. Though there are allegations in the bill that the stock was placed in the name of Laurens Investment Company, Inc., fraudulently for the purpose of avoiding liability at a time when the bank was insolvent or in danger of becoming so, these allegations were at the trial abandoned, and here, as there, it was admitted that, if the record ownership is the real ownership, there is no liability.

The suit was brought against Laurens Investment Company as the record owner of 184½ shares; against Corker as the real owner of 156½ shares, Mrs. Corker as the real owner of 28 shares, and against Corker and his two sons, the sole stockholders of the Laurens Company, upon the theory that it was not a reality but a fiction, that, the efforts at incorporation having failed, the stockholders were liable as partners.

Without opinion or findings, the trial judge gave judgment against the Laurens Company for the whole assessment, and against Corker to the extent of 156½ shares. He denied judgment against Mrs. Corker and their two sons. The stipulation on which the case was tried, together with the oral testimony, show that the First National Bank of Dublin was organized in 1902, and that it suspended payment in September, 1928; that F. G. Corker was during all of this time its president; that in December, 1927, its capital structure having become impaired through frozen loans, upon the demand of the Comptroller of the Currency that the stockholders of the bank pay additional capital in, it was decided that each shareholder would surrender for cancellation one-half of his holdings, and that new stock to the amount of $100,000 would be at once issued to take the place of that surrendered.

Corker, though still president of the bank, was not active, being then, and having for many years been, a resident of Atlanta, and though he, with other directors, underwrote the whole of the new subscription, the matter of placing the new stock was handled by others.

Corker made it plain to the committee that, while he had no apprehension about the bank, felt that it was solvent, and would continue to be, on account of a security loss he had sustained, and on account of his age and health, he did not want to subscribe personally for any of the new stock and subject himself to the probability of an assessment on account of owning it. He stated to them that he would subscribe for 150 shares of the stock, not for himself, but for a corporation which he was organizing, and he subscribed for the stock as "F. G. Corker, Agent."

On January 9, 1928, this stock was paid for with $15,000 borrowed by appellant from another bank upon his personal note, secured by the 150 shares of stock, to which was attached a blank power of attorney, undated, signed "Laurens Investment Company, Inc. by F. G. Corker," in whose name, though that company had not yet been organized, the stock had been issued. On the same day a 4 per cent. dividend was declared, and checks were issued by the bank to Laurens, to Corker, and to Mrs. Corker. All of these checks, indorsed to the credit

of F. G. Corker, were deposited in appellant's personal account.

The facts as to the Laurens Company and its organization are: On February 3d the charter of the Laurens Investment Company, Inc., on a petition filed December 27, 1927, was issued, with an authorized capital stock of $10, Corker and his two sons incorporators. On the next day the capital stock was subscribed for, by-laws were adopted, the subscription of F. G. Corker as agent for the Laurens Company to 150 shares of the Dublin Bank stock was ratified, and it was resolved that the Laurens Company purchase Mrs. Corker's stock in the bank, and that of appellant, except 21 shares which he retained to qualify him as a director in the bank; and that it give to appellant and his wife notes dated back to January 5, 1928, bearing interest at 8 per cent., representing the par value of 156½ and 28 shares respectively, making up the total of 184½ shares which stood in the name of the Laurens Company. The January dividends already paid were credited on these notes. No other corporate action was ever taken by the Laurens Company, its stockholders, or its officers. It issued no stock certificates, kept no books, had no seal. The only money it ever possessed was the $20 paid by appellant for organization expenses. It claimed no assets, except the stock in its name; it had no credit; the money with which the stock was purchased was acquired entirely upon the credit of appellant. No record except the credit on the back of the notes was ever made of the receipt by it of dividends. It was organized for the sole purpose of owning the bank stock, pursuant to the idea of appellant that its organization and the placing of the stock in its name would prevent his being liable for stock assessments.

There is no evidence in the record of any activity of Laurens Investment Company except in name. Every transaction had by or with reference to it was managed, controlled, and directed by appellant, and it functioned entirely as an agency or instrumentality of his. Writing to the cashier of the First National Bank of Dublin requesting the transfer of shares from his and his wife's name to the name of Laurens Company, appellant said of that company, "This corporation will handle a great many of my transactions, tax matters and other things."

Mrs. Corker testified by affidavit in substance that she knew nothing of the affairs of the bank; that her husband had given her 56 shares of stock, which of course she was very pleased to receive; that in December, 1927, he had told her that a reorganization would make it necessary for her to give up half of her stock, and that thereafter he told her that it would be a good idea for her to sell her stock in the bank to the Laurens Company, which he and their sons were organizing; that she agreed to it, and that Mr. Corker handled the matters effectuating this agreement; that she knew nothing whatever about the company except that her husband told her it would be organized by him and their two sons.

■■ We think that the inferences which the judgment of the trial court shows that he drew from these, the undisputed facts of record, that the Laurens Investment Company, Inc., was not a fiction, but a reality, that there was no partnership liability upon the incorporators of it, that Mrs. Corker made an actual and bona fide sale and transfer to that company of her stock, that the Laurens Company was "nothing but an instrumentality or agency of appellant who owned it and controlled its every action" [Wilson & Toomer v. American Cyanamid Co. (C. C. A.) 33 F.(2d) 812, 815], and that these stock transactions were merely one of the many transactions of appellant to which he in his letter to Freeman referred when he said: "This corporation will handle a great many of my transactions"—are the only ones which may fairly be drawn from the record, and that they fully support the judgment. The law of a case of this kind is well settled; indeed, the parties are in agreement on it. It is that, while the statute [1] fixing liability upon the stockholders of banks does not permit evasion of liability by pretended transfers, it does not prevent real transfers if made bona fide even to insolvent transferees. McDonald v. Dew-

[1] Title 12, § 64, U. S. Code Ann.: "Individual liability of shareholders; transfer of shares. The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock. The stockholders in any national banking association who shall have transferred their shares or registered the transfer thereof within sixty days next before the date of the failure of such association to meet its obligations, or, with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability; but this provision shall not be construed to affect in any way any recourse which such shareholders might otherwise have against those in whose names such shares are registered at the time of such failure."

ey, 202 U. S. 510, 26 S. Ct. 731, 50 L. Ed. 1128, 6 Ann. Cas. 419.

Appellant devotes a large portion of his brief to the contention that the Laurens Company was a real corporation, validly organized and validly existing, and that, in view of the frankness with which the purpose to avoid liability was avowed, and the things to accomplish that purpose done, there is no warrant here for disregarding the corporate character of the Laurens Company in order to hold its incorporators liable.

Appellant's troubles do not arise from the fact that the corporate entity of the Laurens Company has been disregarded. The judgment of the court below fully recognized and gave effect to that entity. It found that, though it did in fact exist, it existed as a mere creature organized and maintained for the purpose of holding, not really, but as agent for appellant, the stock which he caused to be put in its name, that appellant at all times remained the real owner of the shares, and that the law will look through the subterfuge of pretended ownership to fasten liability upon the shareholder to whom, in fact, the shares belong.

The view which the court below took, and which we take, does not require, in fact, it prevents, the conclusion that the corporation in this case was a fiction, having no corporate existence. In this view, the judgment, thoroughly consistent with itself, stands upon the sound foundation on which alone a just disposition of this case may rest. It correctly gives effect to the general intent of appellant to create a corporation for the purpose of placing in its name his and his wife's stock in the bank, because what was done made that intent effectual. It with equal correctness denies effect to the particular intent which induced him to act as he did, to avoid liability on the stock, because the things done by appellant were not in accord, but wholly inconsistent, with that intent. For while the things done did place the certificates of stock in the name of the Laurens Company, they did not divest appellant of his beneficial ownership of them, but left him the real owner, and therefore liable to assessment. The case is ruled by Germania Nat. Bank v. Case, 99 U. S. 628, 25 L. Ed. 448; Ohio Valley Nat. Bank v. Hulitt, 204 U. S. 162, 27 S. Ct. 179, 51 L. Ed. 423; Houghton v. Hubbell (C. C. A.) 91 F. 453.

The judgment of the court below is affirmed.