## ANDERSON v. ABBOTT et al.
### No. 1046.

District Court, W. D. Kentucky, Louisville.
May 13, 1938.

Nichols, Morrill, Wood, Marx & Ginter, of Cincinnati, Ohio, and Alfred C. Krieger, of Louisville, Ky., for plaintiff.

SWINFORD, Judge.

This case is before the court on motions that present the following questions for determination: The sufficiency of the bill of complaint; the legality of the defenses presented in paragraphs one and two of the answer.

On April 22, 1927, the stockholders of the National Bank of Kentucky and the Louisville Trust Company entered into an agreement whereby a majority of the capital stock of each company was transferred to six trustees. In lieu of the bank stock the beneficial owners of the stock were issued trustees' participation certificates, of the par value of $100 each. Later each share of the trust estate was divided into

10 shares of a par value of $10 each. There was issued and outstanding at the time the National Bank of Kentucky closed 570,550 such shares which represented 39,820 shares of the capital stock of the National Bank of Kentucky and 17,235 shares of the capital stock of the Louisville Trust Company.

In 1929 a third corporation known as BancoKentucky was organized under the laws of the state of Delaware. It had an authorized capital stock of 2,000,000 shares, of the par value of $10 each. The trustees' participation certificates held by the original stockholders of the National Bank of Kentucky and the Louisville Trust Company were exchanged for shares of the stock of BancoKentucky at the rate of two for one.

This exchange culminated in the owners of the trustees' participation certificates holding 1,080,768 shares of the capital stock of BancoKentucky. Of the remaining shares of stock 394,786 shares were sold and $9,869,650 paid into the treasury of BancoKentucky.

It is alleged that BancoKentucky was organized at the instance of the officers and directors of the National Bank of Kentucky and the officers and directors of the Louisville Trust Company and the trustees under the trust agreement of April 22, 1927, and proposed by them to the holders of the trustees' participation shares in the National Bank of Kentucky and the Louisville Trust Company; that the holders of the trustees' participation shares represented approximately 95 per cent. of the stock of the National Bank of Kentucky and the Louisville Trust Company and that these trustees caused BancoKentucky to be organized as their agency and instrumentality.

A receiver was appointed for BancoKentucky in November, 1930. The National Bank of Kentucky was closed by a resolution of its board of directors on November 16, 1930, and on the following day the Comptroller of the Currency appointed a receiver for the National Bank of Kentucky. This receiver, Paul C. Keyes, was later succeeded by the present receiver, A. M. Anderson.

On February 20, 1931, the Comptroller of the Currency levied an assessment upon the stockholders of the National Bank of Kentucky payable not later than April 1, 1931.

On October 31, 1931, the receiver of the National Bank of Kentucky filed an action to recover the amount of the assessment against the receiver of BancoKentucky, and obtained a judgment for the amount of the assessment, to wit, $3,772,162.40. The judgment was entered on September 14, 1932. On appeal to the Circuit Court of Appeals the judgment of the lower court was affirmed. Laurent v. Anderson, 6 Cir., 70 F.2d 819.

Under the judgment the receiver of BancoKentucky paid to the receiver of the National Bank of Kentucky the sum of $90,745.17 to be credited on the judgment. Thereafter, on February 17, 1936, the receiver for the National Bank of Kentucky brought this suit in equity against the stockholders of BancoKentucky, alleging individual liability to pay the assessment against shareholders of the National Bank of Kentucky in the proportion that the respective shares of the BancoKentucky company bear to the total number of shares of BancoKentucky issued and outstanding at the date the National Bank of Kentucky closed.

The receiver here seeks to recover the sum of $3,771,464.22, subject to the credit of $90,745.17, paid on December 18, 1934, by the receiver of BancoKentucky.

The defenses to this bill of complaint raised by the motion to dismiss are as follows: (1) That it does not state a cause of action; (2) that it is barred by the statute of limitations; (3) that there is a misjoinder of parties defendant; (4) that by a judgment in the case of Laurent v. Anderson supra, there is res judicata, by reason of the fact that in that case BancoKentucky was adjudged to be the actual owner of the shares of stock involved; (5) that by a proceeding against BancoKentucky and alleging and establishing that BancoKentucky was the actual owner of the capital stock of the National Bank of Kentucky, by a judgment in the case of Laurent v. Anderson, supra, the receiver made an election of persons and an election of remedies and is bound thereby.

■ This opinion will be confined strictly to a consideration of these points on the assumption that the facts well pleaded are true.

The sufficiency of the bill of complaint under the first heading is determined by a consideration of the subsequent four questions. It is my opinion that the bill states a cause of action and the motion to dismiss should be overruled.

■ The statute of limitations is not a defense. The Kentucky Statute, § 2515, provides certain character of actions that must be brought within five years. This suit is based on the assessment and not on any agreement that was made whether fraudulent or not fraudulent. It is true the bill alleges fraud in the creation of the corporation BancoKentucky, but it does not seek to nullify that action or to hold all transactions of that corporation void for fraud. It says that the creation of a holding company as an instrumentality for the shareholders does not preclude a recovery of the assessment, under the provisions of the federal statute, 12 U.S.C.A. § 63, providing double liability, from the actual owners of the bank stock.

To apply the theory of the defendants would be to hold the transfer of stock to the alleged holding company fraudulent and void.

It is alleged that Banco was formed for one purpose and that was to shield stockholders in the National Bank of Kentucky from double liability. There is no definite reason why Banco failed. Possibly from general economic conditions. If we assume that these economic conditions had not become acute for six years after the incorporation of Banco, then according to counsel for defendants the receiver could have proceeded against no one for the assessment.

■ An action against shareholders for an assessment does not accrue until the assessment is due and payable. The assessment was levied on February 20, 1931, and payable on April 1, 1931. This proceeding was instituted on February 19, 1936. It was April 1, 1931, that the right of action accrued. Strasburger v. Schram, App.D.C., 93 F.2d 246; Barbour v. Thomas, 6 Cir., 86 F.2d 510; McDonald v. Thompson, 184 U.S. 71, 22 S.Ct. 297, 46 L.Ed. 437.

In a brief addressed to the defense of misjoinder of parties, counsel have argued that there is an entirely adequate remedy at law and a court of equity has no jurisdiction; that the defendants will be embarrassed in presenting their respective defenses by the great number of defendants and variety of defenses.

■ The cases referred to by counsel will establish the rule that the true test is whether defendant will be prejudiced by the alleged multifariousness of the bill. Slater v. Ruggles, 1920, 49 App.D.C. 277, 263 F. 1021. The very nature of this proceeding, however, warrants the court in overruling the motion to dismiss on this ground. There can be no real prejudice to any defendant by proceeding in equity. The interest of the parties under the allegations of the bill are necessarily common in most respects. To dismiss the bill and require the receiver to sue each separate defendant at law would be to destroy the very essence of equity and be a gross injustice to all parties. It would involve years of litigation and expense over the determination of questions which must of necessity apply to each individual defendant.

While many authorities have been called to the court's attention supporting the position of counsel for defendants on this point, each case must manifestly stand on its own merit and precedent can be of little value.

In the case of Hale v. Allinson, 188 U.S. 56, 23 S.Ct. 244, 47 L.Ed. 380, it is stated (page 253): "the defendants have no common interest in these questions, or in the relief sought by the receiver against each defendant." This is certainly not true of the case at bar, as the defendants are all in one class in so far as many of the principal defenses are concerned: Sufficiency of the bill of complaint, election of parties and remedies, and limitation.

The mere computation of liability is not necessarily complicated but this is a minor detail in the joining of the whole number of defendants in one bill in equity. Equity Rule 23, 28 U.S.C.A. following section 723, will adequately protect the individual defendants in the presentation of their several defenses. The Court of Appeals for the Sixth Circuit in the case of Ullrich v. Thomas, 86 F.2d 678, 679, said: "The contention that equity was without jurisdiction because appellee had an adequate remedy at law is unavailing, first, because appellee was enjoined from enforcing the assessments at law; second, because an accounting was required to determine the interests of appellants in the bank as represented by their holding certificates; and, third, because the cross-bill was permissible under Equity Rule 23."

In the recently decided case of A. M. Anderson, etc. v. Elizabeth Atkinson et al., D.C., 22 F.Supp. 853, in the Northern District of Illinois, wherein there were joined one hundred defendants, and in which the same questions here presented were in-

volved, it was held there was a community of interest between the defendants on all material questions of law and fact and that equity could more efficiently, promptly, inexpensively, and practically attain the ends of justice.

In a case presenting a similar question the Court of Appeals for the Sixth Circuit said: "And these circumstances, namely, the great number of the parties on one side or the other, the identity of the question of law, and the similarity of the facts in the several controversies between the respective parties, are the basis on which the jurisdiction rests. The object is to minimize litigation, not only in the interest of the public, but also for the convenience and advantage of the parties. If the receiver was compelled to bring separate suits, it would entail a vast expense upon the fund in trying over and over again the identical questions of law and fact with each stockholder, and with no substantial advantage to him, but injury, rather, in the increased cost in the immediate suit, and the larger burden upon the fund, created by the many suits against the others." Bailey et al. v. Tillinghast, 99 F. 801, 806.

In the opinion in the case of Hale v. Allinson, supra, the court well stated the real test of equity jurisdiction: "Each case, if not brought directly within the principle of some preceding case, must, as we think, be decided upon its own merits and upon a survey of the real and substantial convenience of all parties, the adequacy of the legal remedy, the situations of the different parties, the points to be contested and the result which would follow if jurisdiction should be assumed or denied; these various matters being factors to be taken into consideration upon the question of equitable jurisdiction on this ground, and whether within reasonable and fair grounds the suit is calculated to be in truth one which will practically prevent a multiplicity of litigation, and will be an actual convenience to all parties, and will not unreasonably overlook or obstruct the material interests of any."

The defense of res judicata is here so closely related to the defense of election of remedies that it hardly admits of separate discussion.

■ It is sometimes very difficult to decide what is res judicata and what is not. Usually the matter is determined by the simple test prescribed by the rule laid down in 15 R.C.L. § 429: "The judg-ment of a court of concurrent jurisdiction directly upon the point, is as a plea, a bar, or as evidence, conclusive, between the same parties, upon the same matter, directly in question in another court."

■ In the case of Laurent v. Anderson, supra, the same matters were not directly in question. The plea is that Banco was set up as an instrumentality or agency of the stockholders of the National Bank of Kentucky. We have for determination a question that has not been finally determined in any other proceeding. The cases of Hawkins v. Glenn, 131 U.S. 319, 9 S. Ct. 739, 33 L.Ed. 184, and Supreme Council of the Royal Arcanum v. Green, 237 U.S. 531, 35 S.Ct. 724, 59 L.Ed. 1089, L. R.A.1916A, 771, relied upon by counsel for defendants, are authority for the proposition that a corporate liability is a stockholder's liability, but what the court is called upon to determine here is whether or not the corporation was set up as an instrumentality or agency for an express purpose.

■ The scope of estoppel by judgment is set out in the case of Tait, Collector of Internal Revenue, v. Western Maryland Railway Co., 289 U.S. 620, 53 S.Ct. 706, 707, 77 L.Ed. 1405: "The scope of the estoppel of a judgment depends upon whether the question arises in a subsequent action between the same parties upon the same claim or demand or upon a different claim or demand. In the former case a judgment upon the merits is an absolute bar to the subsequent action. In the latter the inquiry is whether the point or question to be determined in the later action is the same as that litigated and determined in the original action. Cromwell v. County of Sac, 94 U.S. 351, 352, 353, 24 L.Ed. 195; Southern Pacific R. Co. v. United States, 168 U.S. 1, 48, 18 S.Ct. 18, 42 L.Ed. 355; United States v. Moser, 266 U.S. 236, 241, 45 S.Ct. 66, 69 L.Ed. 262."

■ The Supreme Court in the case of Lyon v. Perin & G. Mfg. Co., 125 U.S. 698, 8 S.Ct. 1024, 31 L.Ed. 839, lays down the following rule (page 1025): "It is well settled that, in order to render a matter res adjudicata, there must be a concurrence of the four conditions, viz: (1) Identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality in the persons for or against whom the claim is made."

The sole question presented in Laurent v. Anderson, supra, was whether Banco was the actual owner of the shares involved.

A reading of the bill shows that the exact question presented here is not that alone, but, further, that Banco was created as an agency and instrumentality to hold the shares of stock for the express purpose of avoiding the double liability provisions of the statute.

I am of the opinion that res judicata is not a good defense.

■ To sustain the defense that the receiver is bound by his election of remedies and persons on the record as it now stands is to hold that the purpose of the statute fixing double liability may be nullified by the concurrence of two things: The organization of a holding company to whom the bank stock is transferred for the purpose of defeating double liability and the bad judgment of a receiver who proceeds against an insolvent holding company rather than against solvent individuals. To so hold would be to substitute the plain and unequivocal language of a good law for the frailities of human judgment.

Why quibble over the question of who is the beneficial owner, BancoKentucky or the individuals who own the stock of BancoKentucky, where it is admitted that BancoKentucky was a mere instrumentality to perpetrate a fraud upon the depositors and creditors of the National Bank of Kentucky.

The defendants contend that there can be but one beneficial and true owner of the bank stock; that Banco has been adjudged the owner and consequently no other person can be the owner.

■ This is pure legal fiction. Banco was the record holder and technical beneficiary of the proceeds from the stock. But, according to the allegations in the bill, was merely the tainted channel through which the benefits went to the actual beneficiaries. The Supreme Court in the case of Christopher v. Norvell, 201 U.S. 216, 26 S.Ct. 502, 506, 50 L.Ed. 732, 5 Ann.Cas. 740, said: "The statute, in effect, says to all who become owners of national bank stock, no matter in what way they become shareholders, that they cannot enjoy the benefits accruing to shareholders, and escape liability for the contracts, debts, and engagements of the bank."

This prevailing interpretation of the application of the double liability statute has been announced repeatedly. See Ohio Valley National Bank v. Hulitt, Receiver, 204 U.S. 162, 27 S.Ct. 179, 51 L.Ed. 423; Corker v. Soper, 5 Cir., 53 F.2d 190; Metropolitan Holding Company v. Snyder, 8 Cir., 79 F.2d 263, 103 A.L.R. 912.

■ The case of Davis v. Wakelee, 156 U.S. 680, 15 S.Ct. 555, 39 L.Ed. 578, cited by counsel for defendants with reference to election of persons states the following rule (page 558): "It may be laid down as a general proposition that, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."

There can be no controversy as to the reason or justice of this well-established rule. There is no confusion of the rule with equitable estoppel.

Here, however, we are confronted with an entirely different case. The receiver is not compelled to make a choice but has the right to pursue either or both ways of collecting the assessment. In the case of Continental National Bank & Trust Company v. O'Neill, 7 Cir., 82 F.2d 650, the court said (page 652): "If it be assumed that both the settlor and the trust estate be liable for the assessment, a suit against one alone would not effect a release of the other obligor, and for an additional reason where it appears that one obligor is a non-resident. Bigelow v. Old Dominion Copper Mining & Smelting Co., 225 U.S. 111, at page 127, 32 S.Ct. 641, 56 L.Ed. 1009, Ann.Cas.1913E, 875. See, also, Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077."

■ If section 5151 of the Revised Statutes, 12 U.S.C.A. § 63, is to have any force whatsoever, it is to assure those who do business with a national bank that the beneficial owner of the stock of the bank shall be assessable to double the amount of the stock subscribed. The question of whether or not BancoKentucky was a separate entity is not presented for determination. From the allegations in the bill of complaint it was organized for the sole purpose of owning bank stock, and especially the bank stock involved here, to carry on

an alleged unlawful enterprise. This is not the simple proposition of determining whether or not a corporation may own bank stock. The allegations in the bill of complaint are: "Pursuant to the above described plan, the holders of the Trustees Participation shares representing 95% of the stock of the National Bank of Kentucky and the Louisville Trust Company, caused said holding corporation to be organized as their instrumentality, for their own use and enrichment and in furtherance of a scheme to engage in unlawful acts and to enable them through said corporate agency and instrumentality unlawfully to acquire, own, hold control and operate a group of state and national banks and trust companies contrary to and in defiance of the meaning, spirit and intent of the laws of the United States and the Commonwealth of Kentucky and other states relating to the ownership, operation and supervision of banks and trust companies."

█ Counsel in their brief for defendants Tashgian et al. state that there were persons who bought stock in BancoKentucky who knew little or nothing of the National Bank of Kentucky. Regardless of their knowledge, they must of necessity be the part owners of the bank stock and consequently beneficial and true owners and charged with the liability under the allegations of the bill of complaint.

█ Counsel seek to distinguish the case at bar from Barbour v. Thomas, 6 Cir., 86 F.2d 510. I cannot agree that simply by contracting for the statutory liability and so advertising there was anything added to the force of the statute. Neither do I agree that the statement in that opinion (page 517) that "none of its stock was sold to the public nor issued to any persons other than the stockholders of the banks or their assignees," destroys it as an authority here.

█ Counsel for defendants make the distinction that in the case at bar that many of the stockholders of Banco have never owned any of the stock of the National Bank of Kentucky and could not possibly have been a party to an attempt to avoid double liability as owners of bank stock.

BancoKentucky was a holding company for bank stock and was the record owner of 95 per cent. of the shares of the National Bank of Kentucky, all of the stockholders of Banco profited from the dividends produced by the stock of the National Bank of Kentucky, and they should be charged with knowledge of the assets of a corporation (Banco) in whose stock they invested and from which assets they derived benefits.

The motion to dismiss the petition is overruled and orders may be drawn accordingly.